# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JAMES ELLIS and DARRYL ELLIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> JP MORGAN CHASE BANK NA, <br><br> Defendant. | Case No.: 19-cv-879 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (the "EFTA") and common law principles of contract law.

## JURISDICTION AND VENUE

2. The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 12 U.S.C. § 2614, 15 U.S.C. § 1693m, and 28 U.S.C. §§ 1331, 1337, and 1367. The court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1331(d) because this is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

3. Venue in this District is proper in that Defendant directed its conduct into the District.

## PARTIES

4. Plaintiffs James Ellis and Darryl Ellis are a married couple who reside together in the Eastern District of Wisconsin (Milwaukee County).

5. Each plaintiff is a "consumer" as defined in the EFTA, 15 U.S.C. § 1693a(6), and Regulation E, 12 C.F.R. § 1005.2(e) in that each plaintiff is a natural person.

6. Each plaintiff is also a "sender" as defined in Regulation E, 12 C.F.R. § 1005.30(g), in that each plaintiff is a consumer who requested a remittance transfer provider to send a remittance transfer to a designated recipient.

7. Defendant JP Morgan Chase Bank, N.A. ("Chase Bank") is a multinational investment bank and financial services company headquartered in the United States, and one of the largest banks in the world.

8. Chase Bank does substantial business in Wisconsin.

9. Chase Bank is a "financial institution" as defined in the EFTA, 15 U.S.C. § 1693a, and Regulation E, 12 C.F.R. § 1005.2(i), in that it is a national bank holding an account belonging to Plaintiffs.

## FACTS

10. On or about August 26, 2016, Plaintiffs "closed" on the purchase of their home at 6200 West Pierner Place, Brown Deer, Wisconsin 53223. The loan was a Federal Housing Administration ("FHA") insured loan.

11. Shortly after closing, the servicing rights for Plaintiffs' mortgage loan were transferred to Pacific Union Financial, LLC ("PUF").

12. Shortly after the servicing rights for the Plaintiffs' mortgage loan were transferred to PUF, Plaintiffs requested that PUF set up budget bi-weekly drafting in a manner consistent with their income.

13. On November 10, 2016, PUF mailed Plaintiffs a letter to inform them that their request for "Budget bi-weekly drafting" has been processed. A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

14. <u>Exhibit A</u> states:

```
Dear James W Ellis and Darryl Darvi Ellis :

Your request to set up Budget bi-weekly drafting for your mortgage
loan has been processed.  Please review the information below for
accuracy and contact us immediately if changes or corrections are
necessary.

    Mortgage Loan Number              ████6239
    Current Monthly Payment Amount   $   1,420.79
    Beginning Draft Date              11-11-2016

In order for the Budget biweekly drafting to begin, your mortgage
loan must be due for December 2016 prior to the initial draft date.

One-half of your regular monthly payment will draft on 11-11-2016
and every 14-days thereafter.  Drafting must begin at least 21-days
prior to the next payment due date.  We will only draft your account
provided your loan is paid one month ahead.
```

15. Consistent with this "Budget bi-weekly drafting" authorization, PUF received electronic funds transfers from Plaintiffs' Chase Total Checking account ending in 2973 every 14 days.

16. The "Budget bi-weekly drafting" authorized PUF to withdraw money electronically from Plaintiffs' checking account at Chase Bank at regular intervals. It is an "electronic fund transfer" pursuant to 15 U.S.C. § 1693a(7) and a "preauthorized electronic fund transfer" pursuant to 15 U.S.C. § 1693a(10).

3

17. Each payment was in the amount of one half of Plaintiffs' monthly mortgage payment, and payments occurred every other Friday. For example, PUF received electronic funds transfers in the amount of $712.56 on December 21, 2018; January 4, 2019; January 18, 2019; and February 1, 2019. A copy of the account statements for Plaintiffs' Chase Total Checking account covering the period between December 15, 2018 and February 14, 2019, which reflect these December 21, 2018; January 4, 2019; January 18, 2019; and February 1, 2019 transfers, is attached to this complaint as <u>Exhibit B</u>.

18. On or about February 8, 2019, Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar") mailed a "Re: Transfer of Servicing of your mortgage from Pacific Union Financial, LLC" letter to Plaintiffs, informing them of the "great news" that "[t]he servicing of your mortgage with Pacific Union Financial, LLC … has been transferred to Mr. Cooper." A copy of this letter is attached to this complaint as <u>Exhibit C</u>.

19. As Plaintiffs had made a payment on February 1, 2019, the next scheduled payment, which would have been the first payment after servicing rights were transferred to Nationstar, was scheduled for February 15, 2019.

20. Plaintiffs did not execute a modification or agree to modify the terms of the existing "Budget bi-weekly drafting" authorization agreement that they had entered with PUF, and pursuant to which Defendant had been making electronic funds transfers for more than two years.

21. Indeed, upon information and belief, Plaintiffs' mortgage servicing rights were "transferred" from PUF to Nationstar through Nationstar's purchase and acquisition of PUF outright. https://www.housingwire.com/articles/48097-mr-cooper-acquires-pacific-union-financial (accessed: April 24, 2019).

4

22. Plaintiffs first learned that servicing rights had been transferred from PUF to Nationstar when they received the February 8, 2019 "Re: Transfer of Servicing" letter.

23. Plaintiffs had no opportunity to contact Chase Bank to ensure that Chase Bank was aware that Plaintiffs' prior agreement with PUF was still effective, and the amount and timing of each withdrawal was not supposed to change.

24. Notwithstanding that Plaintiffs did not execute a modification or agree to modify the terms of the existing "Budget bi-weekly drafting" authorization agreement and that Plaintiffs' payment was scheduled for Friday, February 15, 2019, Defendant made an electronic funds transfer from Plaintiffs' checking account to Nationstar on Monday, February 11, 2019 in the amount of $712.56.

25. The February 11, 2019 transfer caused Plaintiffs' checking account to be overdrawn, and Chase Bank charged Plaintiffs a $34.00 overdraft fee. *See,* Exhibit B at 7.

26. Plaintiffs did not provide any authorization for Chase Bank to make the February 11, 2019 transfer. The only authorization Chase Bank had to transfer funds to Nationstar was the electronic funds transfer authorization that Plaintiffs executed with PUF.

27. On March 18, 2019, Defendant transferred the payment scheduled for March 15, 2019.

28. On April 1, 2019, Defendant transferred the payment scheduled for March 29, 2019.

29. Neither the March 18, 2019 nor April 1, 2019 payments directly resulted in an overdraft.

5

30. However, on April 2, 2019, the day after Defendant transferred the payment scheduled for March 29, 2019, Defendant transferred another payment, this time in the amount of $1,469.77.

31. Upon information and belief, the April 2, 2019 transfer amount, $1,469.77, was one full month's mortgage payment. Neither Chase Bank nor Nationstar had any authorization or basis for initiating this transfer, and had no authorization or basis for initiating any transfers, electronic or otherwise, in the amount of $1,469.77.

32. The unauthorized electronic funds transfer on April 2, 2019 caused a ripple effect whereby Plaintiffs incurred at least three overdraft fees, each in the amount of $34.00.

33. When Plaintiffs informed Nationstar that the April 2, 2019 transfer was unauthorized and had caused Plaintiffs to incur at least three overdraft fees, Nationstar refunded just $770.00, essentially the amount of half of the unauthorized transfer, plus one $34.00 overdraft fee.

34. Defendant should never have made the transfer, and never should have charged Plaintiffs any overdraft fees as a result of the unauthorized transfer, which was entirely Defendant's fault.

35. Further, it appears that Defendant reordered the transactions of April 2, 2019 so that Defendant could impose two improper overdrafts instead of one.

36. Because Defendant improperly processed the unauthorized Nationstar transfer before processing a $55.52 payment to Heights Finance, Plaintiffs' account incurred an overdraft fee not only for the unauthorized Nationstar payment but also for the Heights Finance payment.

6

37. Upon information and belief, Defendant did not reorder these transactions for any legitimate purpose. Instead, Defendant reordered them for the purpose of maximizing the number of overdraft fees that accrue for consumers like Plaintiffs.

38. Reordering the transactions in the manner renders these overdraft fees an unfair, unconscionable, and unenforceable penalty clause that is not contemplated as a means of pre-determining damages to Defendant as a result of overdrafts but rather as a means of increasing Defendant's profits at the expense of the consumers least able to pay these fees.

39. This reordering of transactions is a breach of the implied duty of good faith and fair dealing.

40. Upon information and belief, the overdraft fees do not reasonably contemplate the damages Defendant sustains as a result of consumer overdrafts.

41. Chase Bank does not suffer $34.00 in damages every time a consumer overdrafts an account.

42. If the overdraft fees reasonably contemplated the damages Defendant sustains when a consumer overdrafts, Defendant would not reorder transactions with the purpose of increasing the number of overdrafts, and would instead attempt to reduce the number of overdrafts.

43. Defendant made no attempt to mitigate damages.

### *The EFTA*

44. The purpose of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

45. "Electronic funds transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1692a(7).

46. An "unauthorized electronic fund transfer" is defined as "an electronic funds transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1692a(12).

47. A "preauthorized electronic fund transfer" is defined as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

48. 15 U.S.C. § 1693e(a) provides that:

A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made….

49. A one-time charge that is not authorized by an electronic funds transfer agreement is not authorized by the consumer in writing. *See Wendorf v. Landers*, 755 F. Supp. 2d 972, 976-77 (N.D. Ill. 2010); *see also, Wike v. Vertrue, Inc.*, 566 F.3d 590, 594-95 (6th Cir. 2009).

## **COUNT I – EFTA**

50. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

51. The electronic funds transfer authorization that Plaintiffs entered with PUF authorized Chase to make electronic funds transfers on a bi-weekly basis every other Friday, and in the amount of half of the monthly mortgage payment to Plaintiffs mortgage servicer.

8

52. 15 U.S.C. § 1693e(b) provides that, "in the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer."

53. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2019 that were not consistent with the electronic funds authorization that Plaintiffs entered with PUF.

54. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2109 without providing reasonable advance notice to Plaintiffs of the amount to be transferred and the scheduled date of the transfer.

55. As a result of these unauthorized transfers, Plaintiffs suffered damages including but not limited to overdraft fees and emotional distress from their checking account being overdrawn and having to demand Defendant correct its errors.

56. Defendant violated 15 U.S.C. §§ 1693e(b).

## COUNT II – Breach of Contract

57. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. Plaintiffs and PUF executed an electronic funds transfer authorization agreement, which authorized Defendant to make biweekly electronic funds transfers to the servicer of Plaintiffs mortgage in the amount of one half of the regular monthly payment.

59. Nationstar purchased and acquired all of PUF's assets, including the right to service Plaintiffs' mortgage.

60. Defendant made electronic funds transfers on February 11, 2019 and April 2, 2019 that were not consistent with the electronic funds authorization that Plaintiffs entered with PUF.

61. Defendant made electronic funds transfers on February 11, 2019 and April 2, 2109 without providing reasonable advance notice to Plaintiffs of the amount to be transferred and the scheduled date of the transfer.

62. Defendant did not timely refund Plaintiffs for the unauthorized April 2, 2019 transfer or compensate Plaintiffs for the consequential damages arising from that unauthorized transfer.

63. Obtaining authorization to initiate electronic funds transfers and properly allocating payments are standard servicer's duties.

64. Defendant did not honor Plaintiffs' electronic funds transfer authorization agreement.

65. Defendant reordered the transactions with the sole purpose of increasing the number of overdraft fees.

66. Defendant's reordering of transactions is a breach of the implied duty of good faith and fair dealing.

67. The overdraft fees do not reasonably contemplate the damages Defendant sustains as a result of consumer overdrafts.

68. If the overdraft fees reasonably contemplated the damages Defendant sustains when a consumer overdrafts, Defendant would not reorder transactions with the purpose of increasing the number of overdrafts, and would instead attempt to reduce the number of overdrafts.

69. Defendant made no attempt to mitigate damages.

70. Plaintiffs suffered damages as a result of the breach.

## COUNT III – Unjust Enrichment

71. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Defendant acted unlawfully, unfairly, and deceptively.

73. As a result of Defendant's unlawful, unfair, and deceptive conduct, Plaintiffs paid unauthorized amounts, and made premature payments.

74. Defendant obtained a benefit as a result of their unlawful, unfair, and deceptive conduct in the form of the unauthorized and illegal overdraft fees.

75. Under principles of equity and good conscience, Defendant should not be permitted to retain revenue that it acquired by virtue of its unlawful conduct. All funds, revenue, and benefits received by Defendant rightfully belong to Plaintiff and those similarly situated.

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of two classes.

77. Class I ("Unauthorized Funds Transfer Class") consists of:

> (a) all natural persons in the United States of America, (b) whose mortgage loan servicing rights were transferred to Nationstar (c) and who had executed an electronic funds transfer authorization with their prior servicer (d) and from whom Defendant made electronic funds transfers that were inconsistent with the prior existing electronic funds transfer authorization executed with the prior servicer.

78. Class II ("Wisconsin Unauthorized Funds Transfer Class") is a subclass of Class I, and consists of:

> (a) all natural persons in the State of Wisconsin, (b) whose mortgage loan servicing rights were transferred to Nationstar (c) and who had executed an electronic funds transfer authorization with their prior servicer (d) and from whom Defendant made electronic funds transfers that were inconsistent with the prior existing electronic funds transfer authorization executed with the prior servicer.

79. The "Class Period" for Class I dates back to the longest applicable statute of limitations for any claims asserted on behalf of Class I from the date this action was commenced and continues through the date this action was commenced.

80. The "Class Period" for Class II dates back to the longest applicable statute of limitations for any claims asserted on behalf of Class II from the date this action was commenced and continues through the date this action was commenced.

81. Each Class is so numerous that joinder is impracticable.

82. Upon information and belief, there are more than 50 members of each Class.

83. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

84. The predominant common questions are whether Defendant complied with the EFTA and contract law.

85. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

86. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

87. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

88. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: June 14, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com